Good afternoon, Your Honors. May it please the Court, my name is Daniel Blank and I represent Mr. Bibian. I will endeavor to reserve two minutes of rebuttal. Your Honors, the district court in this case erred when it ordered $1.9 million of forfeiture based solely upon a disputed plea agreement provision without resolving the underlying dispute about its validity. The district court should have resolved that dispute and then either reformed the offending provision or struck it if it credited Mr. Bibian's claim. Well, how could it strike it? I mean, in a sense, I mean, your problem is you don't want to withdraw the plea, so, but if you strike a clearly material provision of a plea agreement, presumably the government should be able to get out of the plea. That would depend upon whether it was essential to it or severable. If it were severable, and that would be a factual finding that the Court could make. Well, it seems to have been the most disputed provision. It was the most disputed, but it wasn't the most important. Ironically, the most important provision was one that was also, there was also a mutual mistake. There were, in fact, rife with mutual mistakes. The most important provision was the one from the government recommending a low-end sentence, and that was inadvertently left out of the agreement, the version of the agreement that was signed. That was one of the three mutual mistakes that the government concedes existed. Mr. Bibian says there was a fourth. Another one was the high end of the range in paragraph 2 that had to be interlineated. That was a mutual mistake. The other is the typographical error in paragraph 2 that said $1,000 rather than a million. So this was a plea agreement that was rife with mutual mistakes. My client, which I was appointed to represent him late in this case, submitted a declaration in support of our motion to either reform if there was a mutual mistake or rescind, strike that one paragraph, submitted a declaration saying this wasn't what I understood the agreement to say. And that was supported by facts in the record that we submitted. It was supported by, at least in part, by a declaration from the former's counsel, by previous versions of the agreement that show that at every step. How did the former counsel support it? He supported it by saying that there was this whirlwind of clarifications and corrections going into the hearing that he did not have an opportunity to go over with Mr. Bibbian. So he identified an error. There was the one which is the high end of the range in paragraph 2, changed it, that this was going on the whole time. The other thing that was going on. I mean, my problem here is there's probably, it looks like there may well have been a mistake in the fact that the last paragraph of paragraph 2 and the first sentence of paragraph 11 weren't conformed. But how do I know in what direction it was a mistake? You would know because the district court would make a finding. That's why we have a factual dispute. One said it was a mistake and one party said it was not. The district court. No, but even if it were a mistake, frankly, my looking over this suggests that the most likely mistake was that they didn't get rid of the last sentence of paragraph 2, or that they didn't conform it to what was decided. In other words, that they left that one open instead of making it 1.9 million  Respectfully, Your Honor, I don't see how the facts can support that when what was interlineated, that the last minute was that same part that Your Honor is saying. I understand that, but it was interlineated without noticing that it was, it had a range. Perhaps. In other words, from everything I read, at least that's a pretty good possibility that that was a mistake. There are lots of possibilities. The problem is that the district court didn't do the thing that it needs to do, which is to make a factual finding. There are lots of possibilities. Your main concern is that he should have taken the evidence and decided, and he could have decided that there was a mistake, but it was in the other direction. Correct. All I want, all I wanted then and all I want from Your Honors is a finding from the district court. I think it should be based upon a hearing. But even if the district court in its discretion said, look, I don't need to have a hearing, I'm going to make a finding just based on the papers, that would be satisfactory, and the district court failed to do that. If you look at the language of the order, it's clear from the words that the district court chooses very carefully, things like plausibly and apparently and any inconsistency, the district court was going out of its way to not make a factual finding. Counsel, during the plea colloquy, your client was asked by the court, there's also some discussion in the agreement with respect to forfeiture, did you review those provisions? Correct. What provisions do you think the district court was asking about? The district court was asking about the provisions that were in the version of the plea agreement that the district court had, which ironically were different than the ones that were actually in the signed version. Well, those provisions would have been which ones? Would have been the principal ones dealing with forfeiture? So there were three of them, but the most important one is in paragraph 11. Okay. 11 and 12, both deal with his, 12 deals with his cooperation. Correct. What was the other one? Paragraph 11. Yeah, and 11, I thought you said there were three provisions. Your Honor, I'm not recalling what the other one was. Those are the two that I can see. I can see the word forfeiture referred to in paragraph 9 and paragraph 4. It may appear someplace else. I didn't find it. Noticeably, it doesn't appear in paragraph 2. It does not. And so when the district court asks your client, did you read the provisions with respect to forfeiture, he's got to have in mind paragraph, principally, paragraphs 11 and 12. Agreed. And your client said yes. Correct. And so why doesn't that just end this case? The reason is that, as Mr. Babian explained, he was under a misimpression about what had been changed in the plea agreement with the interlineation and what had not. As his declaration under penalty of perjury stated, he thought that the same changes that had been made to paragraph 2 were also made to paragraph 11. But paragraph 2 didn't say anything about forfeiture. The original version, that's true. But what's parallel between paragraph 11 was quite specific. What's parallel between paragraph 2 and paragraph 11 is that they both dealt with criminal earnings. And in fact, paragraph 11 explicitly references back to paragraph 2. Right. So, and in every version of the plea agreement up until that point, they had been exactly identical. And the district court has an explanation for why that's consistent. It is, but it's not persuasive, and here's why. The district court said, look, we see this all the time, where the parties can agree that a fact is something, but that notwithstanding the fact, the parties can agree on a particular amount of forfeiture. It's absolutely true. The problem, though, is that that's not how the agreement reads. The agreement in paragraph 11 and in paragraph 2 both refer to the same fact. In fact, it uses the word fact in paragraph 11. But you could have – I mean, that's what's strange here. I mean, because of the way this was done earlier, it always had this first lead-in sentence about I admit that I earned whatever. But actually, you don't need that. I mean, it could just go. You did – correct. And if it had been that, then there couldn't have been this room for misunderstanding. But that's – we're left with what we had here. There would be no problem with having the last paragraph of 2 and the Provision 11 starting with I consent to a forfeiture money judgment. They would not be – they couldn't even be arguably inconsistent at that point. Correct. I mean, if paragraph 11 starts out saying I admit that I earned $1.9 million as a result of my criminal activity, that's how it begins. If instead it said I stipulate to the forfeiture of $1.9 million, regardless of the quantity of my actual criminal earnings, that would be different. And that seems to be how the district judge was – he never really mentioned this first sentence. No. He – the district court judge didn't really focus on the language that we have here. And I think that the reason why the district court judge did not is that the district court erroneously thought that he didn't have the authority to grant the relief that I asked for. And that would explain why the district court – Well, but there's nothing in his order that says that. It is. He muttered for a while, but he never actually came to that conclusion. Well, he says that there's a serious question about whether he has the authority to grant it or not. That's in Excerpt of Records 19. And then he sort of goes on, almost in this sort of hypothetical range. Really what it reminded me of is a judgment of acquittal notwithstanding the verdict, saying, look, if there are facts in the record from which it's plausible to have this verdict, then that's all I have to do. That's obviously the wrong standard. If it pleases the Court, I'll reserve the balance. Thank you. May it please the Court. My name is Ann Voights, and I represent the government. This Court should affirm defendant's conviction in forfeiture order because he knowingly and voluntarily stipulated to $1.9 million in forfeiture, and he knowingly and voluntarily waived his right to appeal that amount. And finally, because the Court cannot offer him the only relief that he seeks, which is to unilaterally rewrite the plea agreement at his behest to achieve an agreement to which the government never agreed. If I might address first the issue of the district court's findings. But that's the question, not the answer, right? In other words, what he's saying is you could have a hearing and you could decide whether the government ever agreed to it. In this case, I think the district court didn't need to have a hearing. It had in front of it, the only evidence it had to support defendant's claim was defendant's declaration, which didn't talk about what the parties had agreed to, but his understanding of what he was willing to do. At least a severe tension between the last sentence of paragraph 2 and the first sentence of paragraph 11. If you took out the first sentence of paragraph 11, then there wouldn't be a problem. And if you took out the last sentence of paragraph 2, there wouldn't be a problem. But they do seem to say different things about whether he's conceding his earnings or not. Well, I think as the court found, as the district court found, it was entirely possible to have different stipulations, one for the amount of loss in paragraph 2 and in paragraph 11. But as you pointed out. Well, paragraph 2 doesn't, is a, I agree that the following facts are true. I mean, you're saying that it was about amount of loss, but it's saying these facts are true. And then, and not more than that. And later it says that, then in the beginning, the first sentence of 11 says he admits that he earned $1,900,000, in which case, which surely could be used if it were pertinent. It turns out it wasn't pertinent to the amount of loss for sentencing purposes. Right. I think if I could address the pertinent point, I think the issue here was that really, to the extent, the parties, as the evidence shows, were really negotiating paragraphs 2 and paragraphs 11. But paragraph 2, they were negotiating to make sure that it didn't undercut paragraph 11. The real concern here was the amount of forfeiture. And so as you see with the interlineation, what they did was they made sure that there both parties agreed that the ceiling in paragraph 2 should be 1.9, that it should conform with the set number in paragraph 11. Counsel, a question for you about paragraph 11. Paragraph 11 says, I admit that I earned $1.9 million as the result of my criminal activity discussed above. But in paragraph 2, it's actually the language is somewhat different. It talks about the sale of international driver's licenses, false state driver's licenses, and false state identification documents. Is there a difference in this case between is criminal activity broader or did criminal activity mean to simply subsume what appears in paragraph 2? For example, he was also stealing mail or doing some other activity. That would be criminal activity, which would be broader than what appears in the factual basis in paragraph 2. That is correct. I think it could be read to read more broadly. But how about in this case? Is that? In this case, it was based on the criminal activity that was charged, yes. If I might address the issue of the district court's factual findings. In fact, the district court did make factual findings. It found that any discrepancy could not be reduced to a mutual mistake. It held that the meaning of the terms was clear and that they were not necessarily inconsistent. And the district court didn't need to find that they weren't inconsistent. It just needed to find that they weren't clearly inconsistent within the meaning of angling. And in fact, they were not. Finally, it found that nor could any discrepancy be reduced to mutual mistake. To the extent that there is any evidence here, it is at most of unilateral mistake. That might entitle to. I'm sorry to hear that. At most unilateral mistake, which would entitle defendant potentially, if credited, to withdraw his plea. It does not, and defendant can't cite any case that would support unilaterally rewriting the most heavily negotiated, most crucial provision of the plea agreement to establish a bargain that the government never struck with him. This is a question for you. I mean, I think we can all agree that this probably wasn't handled the best way possible. Going forward, our prosecutors in your office, if there is going to be some last minute change, are they going to put on the record? Your Honor, there has been one change to paragraph 2. We just want to make sure Mr. Bibbion, who is a fraudster himself, knows that there is this change and we're not in this situation. I think in this case, that is what happened. It was the only change to which the parties agreed. Mr. Bibbion, as the record shows, had the chance. He both reviewed the document and he discussed it with counsel at that hearing. And then the only two changes were, in fact, noted on the record, which was the change to the ceiling in paragraph 2 and then the recommendation of a low-end sentence. And the other question I had was how is it that the district court had a different version of the plea agreement? Are plea agreements in Northern District provided, like drafts provided to the court before a change of plea? So this was provided before. In fact, there were essentially four versions of the plea agreement, two that never made it to the court, a third that was provided to the court, and then the final version. And the final version was the one which had the range in paragraph 2 and the set number in paragraph 11. So they're not filed before they're presented to the court? They're not stamped by the courtroom deputy when they're provided? No. In this case, no agreement was signed until that final fourth agreement. Okay. And as defendant said in the plea colloquy, he admitted that he had had time to read it, that he'd had time to review it and discuss it with counsel. And he specifically said that he had reviewed the forfeiture provisions. And we would submit that on that record, that is enough to show that he knowingly and voluntarily both entered into the stipulation with respect to forfeiture and that his waiver of his appellate rights should also be held against him. I've seen other districts have the defendant actually initial the lower right-hand corner of every page. I take it your district doesn't do that? I don't know that there's a uniform practice. And in this case, I'm not sure. I'm sorry. I was just going to say, I'm not sure in this case that that would have addressed the issue of 11, because there was no change to paragraph 11. But if he initialed all the pages, then there would be no doubt he reviewed it, as opposed to the argument now from Mr. Blank, I believe, is that he didn't actually review this version. Correct. And that's contradicted by his own statements under oath. No, I understand. I understand. Good point. The district court refers to a set of government exhibits and declarations and so on. But is it your understanding that he relied on any of those or he ultimately – because his ultimate decision seems to be that there was no contradiction, so he's not going to consider any extrinsic evidence and make any decisions? I think that's correct, Your Honor. I think what this Court should do is similarly look to the terms of the plea agreement. If they aren't ambiguous, then you're – I can't hear you. I'm sorry. I'm sorry. First, to look at the terms of the plea agreement. If they aren't ambiguous, then that resolves the issue there. If they are, then the Court can look at the extrinsic evidence. It's ambiguous whether he was agreeing that his earnings were between 1.9 million or that they were 1.9 million. But maybe it's not a material ambiguity because neither of them really matters. It doesn't seem to matter to the amount of loss, and it doesn't really seem to matter to the forfeiture agreement if there's a freestanding forfeiture agreement. But there is a contradiction there, it seems to me. The Court found that there wasn't, even if this Court disagrees, though, looking at the extrinsic evidence. It can't – since it wasn't taking any evidence and making any findings, it seems to me we're not bound by anything he found because he didn't find anything. Well, I think it did find. It found that the meaning was clear, that it wasn't inconsistent, and that it was knowingly and voluntarily entered into. So even if there is an inconsistency, if the defendant knowingly and voluntarily entered into it, then I think there is no room for relief. But even if this Court were to look at the extrinsic evidence, which was before the district court, then that doesn't necessarily entitle defendant to relief. As I said, there's nothing that supports that the government ever agreed to. In fact, it expressly rejected the idea of moving the ceiling of the range down without getting something in exchange. By settling on a number of $1.9 million for forfeiture, the government – Well, I assume Mr. Blank's response to that would be fine that the district court find that, but he didn't find it. I think the district court's findings were sufficient, but this Court can also affirm on any basis in the record – That's why I asked you what I asked you. Did he make any findings in that regard? And I don't think he did. He did actually make findings. He did describe the evidence that was in front of him. Well, if you think he made findings, then we can review the findings. But then he seemed to be inconsistent about what he was willing to consider. I think what he said was he does describe in the factual section, he describes both the plea colloquy, the plea agreement itself, the declarations provided by defense counsel. And I note in particular with respect to the defense counsel's – But that was why I began by asking you, did he in fact make any findings, premise anything in any findings? And you said no. And I think that's probably right. But that's what you said anyway. You did say no. Okay. I think I may have misunderstood the question. But to the extent – I think the Court does set forth all the evidence that was in front of it in the factual section. And what is important, I think, is looking even at his defense counsel's declaration. At no point did he say that the forfeiture provision was a mistake. At no point did he say that he hadn't discussed the provision with his client or the defendant didn't knowingly and voluntarily stipulate to it. So we would submit on this record that this Court should either dismiss based on the appellate waiver or in the alternative affirm. Okay. Thank you very much. Thank you, counsel. You have some rebuttal time. Thank you, Your Honor. Just very briefly, the district court's order is clear that he did not take into account the proffer of Mr. Bibbion. He describes it, but then the district court says – What about the government's evidence? Did take it into account. Well, I don't know that he did. He just – he recited it. And he recited Mr. Bibbion's as well. Well, but he said our evidence was of no moment and then went on to rely on the district court, the government's. But it doesn't matter. He didn't take our evidence into account at all, whether he did take the government's into or not. Just two things very quickly. You heard the government counsel say there were four versions of this agreement floating around. That's why when Mr. Bibbion is asked in open court, are you familiar with this provision, there was a lot of room for confusion, multiple versions, multiple mutual mistakes. Is there any evidence that paragraph 11 was different? How many different versions of paragraph 11? That's in the record. Paragraph 11 was absolutely different. That's the only time where there was a stipulated amount as opposed to a range. And the version right before it, paragraph 11 was identical to paragraph 2. It's the same exact language. A million and then a million nine, a range. So it's totally unclear as to what version we are talking about. And, Your Honor, the last thing is that why couldn't Mr. Bibbion withdraw the plea? Judge Berzon, you asked that. He promised that he wouldn't. That's one of the reasons. The other is that there was a liquid damages, liquidated damages clause in the agreement government routinely insists on. What is that? What that says is that once you admit the facts in paragraph 2, if you violate the agreement, those statements of facts can be used against you at a trial. So it was impossible for him to go back to a status quo ante by withdrawing the plea. I guess you could have litigated that issue if you wanted to withdraw, but I guess that's outside the scope of what we're doing today. And I mean, I think it would have been clear that if we withdrew the plea, then they could use that against us. I'm not sure how we would get around that. I mean, I understand that there were serious reasons that he couldn't withdraw the plea, but the net result then is that I understand the mutual mistake point, but I don't understand the other one. I don't see how you could — how you, in this context, could simply strike this That's based upon an assumption that it is essential to the agreement and not severable. If that — if the court made that finding, then, I would agree, the court didn't. Thank you, Your Honor. Thank you all very much. The case of United States v. Vivian is submitted, and we are adjourned. All rise. This court for this session stands adjourned. Thank you.
judges: Berzon, Bybee, Owens